UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARCELLUS J. PERRY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. )<br>_____ ) | Case No. CV 12–1629 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"),[1] denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2-3]. Plaintiff filed benefits applications alleging that he had been disabled since September 1, 2005 due to severe psoriasis, sciatic arthritis, right hip problems, and high blood pressure. [Administrative Record ("AR") 145, 148, 174]. In a December 22, 2010 written hearing decision that constitutes the Commissioner's final decision in this matter, an

---

[1] Carolyn W. Colvin, who became the Acting Commissioner on February 14, 2013, is substituted for her predecessor, Michael J. Astrue. See Fed. R. Civ. P. 25(d).

administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of psoriasis with possible psoriasis arthritis. [AR 24]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. [AR 26]. Based on the testimony of a vocational expert, the ALJ determined that plaintiff's RFC did not preclude performance of his past work as a resident counselor. [AR 31]. Accordingly, the ALJ concluded that plaintiff not was disabled at any time through the date of his decision. [AR 31-32].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Credibility finding**

Plaintiff's sole contention is that the ALJ improperly assessed plaintiff's subjective symptom testimony. [JS 5-12, 19].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony she considers not credible, she must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d

at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's subjective testimony without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Because there was no evidence of malingering, the ALJ was required to articulate specific, clear, and convincing reasons to support his negative credibility finding.

In his hearing decision, the ALJ summarized plaintiff's subjective symptom testimony as follows[2]:

---

[2] Plaintiff did not challenge the accuracy of the ALJ's summary of plaintiff's subjective testimony. [See JS 3, 5-12, 19].

> [H]e can stand and walk for five to 15 minutes, and lift 10 to 15 pounds . . . has skin sensitivity and swelling, while also experiencing dizziness and fatigue, and . . . he has difficulty squatting, bending, reaching, kneeling, stair-climbing, seeing, using his hands, and talking. [Plaintiff] also alleges problems with his memory, concentration, understanding, completing tasks, and getting along with others.

[AR 27].

The ALJ did not "ignore[] and disregard[]" plaintiff's subjective testimony, as plaintiff contends. [JS 7]. Instead, she credited plaintiff's subjective complaints in part, in that she found that plaintiff could meet the lifting and carrying demands of light work (lifting 10 pounds frequently and 20 pounds occasionally), but could stand and walk no more than two hours in an eight-hour work day; must use a cane for prolonged ambulation; cannot walk on uneven terrain more than occasionally; cannot use his right lower extremity for pushing, pulling, or operating foot controls; cannot stoop or climb ladders, ropes, or scaffolds; can only occasionally engage in other postural activities; and must avoid moderate exposure to unprotected heights, hazardous machinery, and extreme temperatures. [AR 26]. The ALJ articulated specific, clear, and convincing reasons to support her partial rejection of plaintiff's subjective complaints.

Contrary to plaintiff's contention, it was not error for the ALJ to consider the extent to which the objective medical evidence corroborated the alleged severity of plaintiff's subjective symptoms. [See AR 27-29, 235, 237, 239, 362-365, 439, 496]. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins, 261 F.3d at 857; see Bunnell, 947 F.2d at 343, 345. The ALJ determined that objective evidence of plaintiff's scaling and plaques on his skin, superficial perivascular dermatitis, joint pain, use of a cane for assistance with ambulation[3], and prescribed medications warranted the limitations she incorporated in her RFC finding. [AR

---

[3] The ALJ noted that the Veterans' Administration determined in August 2008 that plaintiff did not meet one or more of the following criteria and therefore did not meet the guidelines for a "rollator walker": "balance deficits"; "poor endurance requiring frequent seated rest breaks"; "medical diagnosis. . . that a physician has determined can be improved with ambulation requiring a rollator [wheeled] walker." Plaintiff was noted to walk "without deviation; normal pattern," had no falls and reported no pain, but said that when his psoriasis flared up he could not put weight on

4

27].

The ALJ permissibly concluded, however, that other objective evidence in the record undermined the credibility of plaintiff's complaints of disabling pain and functional limitations, including the consultative examiner's report and treating source records. [AR 27-28]. Mark Borigini, M.D., a board-certified internist who is also board-certified in rheumatology, examined plaintiff at the Commissioner's request on October 4, 2008. [See AR 27, 362-365]. Dr. Borigini elicited a history, reviewed some of plaintiff's medical records, and conducted a physical and neurological examination. Plaintiff's examination findings were grossly normal except for a "very slow, antalgic gait favoring the right lower extremity," and plaintiff's report of pain on chest palpation and hip rotation. Dr. Borigini's impression was: (1) apparent psoriatic arthritis; (2) history of hypertension; (3) chronic back pain with "no neurologic or functional deficit" that he could appreciate; and (4) atypical chest pain. [AR 365]. Dr. Borigini opined that plaintiff should be limited to no more than two hours of standing and walking in an eight-hour work day but otherwise was not precluded from performing light work. [AR 365].

Plaintiff's argument that Dr. Borigini endorsed plaintiff's subjective pain complaints is misguided. [JS 9]. Under "History of Present Illness," Dr. Borigini reported that plaintiff said that he has "constant chest pain," "constant back pain," and "really has pain throughout his body." [AR 362]. That Dr. Borigini did not fully credit plaintiff's subjective history is implicit in his impression, which expressly noted the "atypical" nature of plaintiff's chest pain and the lack of clinical findings supporting his complaints of back pain, as well as in his opinion that plaintiff was able to perform a range of light work. [AR 362, 365].

In addition to Dr. Borigini's mostly benign consultative examination findings, the ALJ cited treating source findings that failed to support plaintiff's subjective complaints of disabling subjective symptoms. In 2006, plaintiff had full use of his extremities and joints with no pain or effusion and normal motor strength. [AR 28, 235, 237]. On May 4, 2008, plaintiff exhibited full range of motion in all extremities, a normal musculoskeletal system, and no signs of cellulitis. [AR 28, 239]. On May 22, 2008, a treating dermatologist noted improvement in plaintiff's psoriasis with topical steroids. [AR 28, 346]. A May 7, 2010 treatment report showed no joint swelling, normal extremities bilaterally, normal tendon reflexes, normal

his feet because they swelled. Plaintiff was given a metallic cane. [AR 28, 723].

motor strength in the upper and lower extremities, a normal gait, and otherwise normal neurologic examination. [AR 28, 439].  A June 30, 2010, examination of plaintiff's extremities, back, and motor strength was normal. [AR 28, 496].  In August 2010, treating dermatologist David Woodley, M.D. found that plaintiff's psoriasis was well-controlled on current medications. [AR 28, 629].

The ALJ noted that plaintiff complained about difficulty seeing. [AR 28].  In August 2008, plaintiff underwent "routine eye care, was told he needed bifocals." [AR 28, 706]. In August 2008, plaintiff's vision needed some correction, but he had no severe visual disease or defect, and "no specific eye problems requiring scheduled follow-ups." [AR 28, 360, 738].  In June 2010, plaintiff denied blurred vision, eye pain, or diplopia (double vision). [AR 28, 494].

The ALJ acknowledged plaintiff's complaints that he had difficulty using his hands, but she permissibly concluded Dr. Borigini's grip strength measurements failed to corroborate any strength limitations beyond those in her RFC finding.  She also noted that plaintiff had not undergone treatment for hand-related problems.  See Bunell, 947 F.2d at 346 (noting that the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant to assessing the credibility of a claimant's subjective complaints).

The ALJ noted that plaintiff alleged difficulty talking, but that there was nothing in the medical record referring to such problems, and that plaintiff had no difficulty responding to questions or volunteering information during the hearing.  Plaintiff argues that the ALJ's observations amounted to impermissible "sit and squirm" jurisprudence. [JS 10].  In the circumstances of this case, that contention lacks merit. An ALJ may not "rely on [her] own observations of the claimant at the hearing as the sole reason for rejecting the claimant's complaints" but she may use "ordinary techniques of credibility evaluation," including her observations of the claimant's demeanor. Tonapetyan, 242 F.3d at 1148 (citing Fair, 885 F.2d at 604 n.5); Bunnell, 947 F.2d at 346.  The ALJ's observations regarding plaintiff's ability to communicate during the hearing were relevant, and those observations were only one of several factors that the ALJ permissibly considered. See Morgan, 169 F.3d at 600 ("The inclusion of the ALJ's personal observations does not render the decision improper."); SSR 96-7p, 1996 WL 374186, at *5 ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the

credibility of the individual's statements.").

The ALJ gave some weight to plaintiff's complaints of dizziness, fatigue, and sensitivity and swelling of his skin, but she rationally concluded that those symptoms did not warrant restrictions beyond those in her RFC finding. [AR 28]. She noted that plaintiff did not complain to his treating doctors about, or receive documented treatment for, dizziness or fatigue, and that the objective evidence indicated that plaintiff's psoriasis was symptomatic at times but generally was controlled with medication. [AR 28-29, 363, 629]. See Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling.").

Similarly, the ALJ discounted plaintiff's subjective complaints of disabling stress and anxiety because they were not corroborated by the objective medical evidence. As the ALJ noted, a consultative psychological examination by board-certified psychiatrist Stephan Simonian, M.D. documented intact mental functional abilities. No significant mental functional limitations were noted. [AR 29, 367-372]. Treatment notes described plaintiff as mildly anxious. He had a negative score on a depression screen. He was noted to have an adjustment disorder that was controlled with diazepam.[4] [AR 29].

The ALJ also doubted the veracity of plaintiff's subjective complaints because plaintiff' physical impairments were only being monitored, or were treated conservatively with medication. Plaintiff argues that the ALJ did not cite to any evidence that more aggressive treatment options exist or had been recommended by his doctors. [JS 11]. That is not accurate; the ALJ noted, for example, that plaintiff did not meet the criteria for a rollator walker, and that his psoriasis generally was managed with topical steroids rather than with the injectable or oral medications that plaintiff occasionally was prescribed for flare-ups. The ALJ also noted that plaintiff sometimes missed scheduled doctor's appointments and was noted to be noncompliant with some of his medications. [AR 30, 449, 487, 498, 534, 537, 540, 549-592]. Plaintiff told his Veterans' Administration ("VA") doctors that he had not seen a doctor for eight years before seeking treatment with the VA in May 2008–two and a half years after his alleged onset of disability—for

---

[4] Diazepam (the generic form of Valium) is used to relieve anxiety and other conditions. See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682047.html (last accessed April 15, 2013).

exacerbation of psoriasis. [AR 30, 239]. Plaintiff explained that he had received treatment from the VA in the past, but had stopped going to the VA because they sent him to different clinics and refused to give him medications. Nevertheless, he went to a VA clinic when he needed treatment in May 2008, suggesting that he could and would have done so earlier if needed. [AR 30, 239]. Plaintiff told his VA doctors that he missed some appointments because he was the primary caretaker to his two young sons, one of whom was severely disabled. [See AR 483, 534, 537, 540, 549-592]. Even assuming that plaintiff had a good reason for missing some appointments, the ALJ reasonably concluded that plaintiff's treatment history during the relevant period was not consistent with the allegedly disabling severity of his subjective symptoms. See Burch, 400 F.3d at 681 (holding that the ALJ did not err in discrediting the claimant's pain testimony where she did not seek treatment for a period of four months, and observing that where the claimant's pain was "not severe enough to motivate her to seek" consistent treatment, her treatment history was "powerful evidence regarding the extent to which she was in pain"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ properly discounted subjective pain complaints in view of a three-year gap in treatment and treating physician's reliance on conservative treatment).

      The ALJ reasonably inferred that plaintiff's "regular activities" also were inconsistent with his subjective complaints. Plaintiff testified that he was the primary caretaker for his two sons, who were presently ages six and seven. [AR 82-83]. The children's mother helped him "when she's able," but plaintiff testified that she was sick, had been on dialysis, and is "a kidney and a heart transplant patient now, so I'm trying to keep her alive." [AR 83]. Plaintiff testified that his younger son was blind, could not talk, and could not do anything on his own. [AR 84]. Plaintiff's VA doctors noted that plaintiff reported that he had full custody of his two sons, and that one son had brain damage, was visually and hearing impaired, could not walk, and was respirator dependent. [AR 349, 483, 534, 549, 589, 592]. Plaintiff testified that one reason he had not looked for work was that he did not have "anyone that I trust to look after my baby boy" [AR 85], and a VA psychiatrist also reported that plaintiff "struggles w[ith] not being able to gain employment due to his role as a full time caregiver." [AR 349]. The ALJ did not err in concluding that plaintiff's ability to meet the considerable demands of caring for two children, including a disabled child, undermined the credibility of his subjective complaints. See Rollins, 261 F.3d at 857 (holding that the claimant's "claim to have totally disabling pain was undermined by her own testimony about her daily actitivities, such as

8

attending to the needs of her two young children" and other household activities); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) (holding that the ALJ properly found that the claimant's daily activities were inconsistent with her allegation of total disability where those activities included caring for her special needs children, paying bills, doing laundry, and cooking); Wentz v. Astrue, 2009 WL 3734104, at *6 (D. Or. Nov. 4, 2009) (holding that the claimant's reported activities were inconsistent with the alleged severity of her subjective symptoms where the claimant reported that she was the primary care-giver for her disabled husband, four mentally impaired children, and a newborn, and that the ALJ rationally interpreted the claimant's statements as an indication that she "felt unable to work because she was too busy with domestic duties," which "is not a permissible basis for a disability claim under the Social Security Act"), aff'd, 410 Fed.Appx. 189 (9th Cir. Oct. 26, 2010).

The ALJ's reasons for partially rejecting plaintiff's subjective testimony were specific, clear, and convincing, and therefore the ALJ did not err in evaluating the credibility of plaintiff's subjective complaints.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

April 15, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge